United States Court of Appeals
Fifth Circuit

**F I L E D**

**April 22, 2003**

Charles R. Fulbruge III
Clerk

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

-----------------------

**No. 02-50423**

-----------------------

**UNITED STATES OF AMERICA,**

**Plaintiff-Appellee,**

**versus**

**DAVID EARL MAJORS,**

**Defendant-Appellant.**

--------------------
Appeal from the United States District Court
for the Western District of Texas
USDC No. W-00-CR-28-2
--------------------

Before REAVLEY, JOLLY, and JONES, Circuit Judges.

PER CURIAM:

David Earl Majors appeals his conviction and sentence after a jury trial for possession of cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1). We affirm.

## BACKGROUND

On March 23, 2000, members of the Waco Police Department's Drug Enforcement and Special Operations Units executed a search warrant for narcotics at the residence of James Murphy Gilbert. Officer Ben Rush was responsible for securing people in

the residence and ensuring that no weapons were present. Rush encountered Majors in the kitchen area; he knew that Majors had a criminal record for drugs, weapons charges, and theft.

Upon ordering Majors to the ground, handcuffing him, and conducting a quick patdown for weapons, Rush felt a large bulge in the left pocket of Majors's baggy shorts. Unable to identify the bulge, Rush pulled up the outside of Majors's pocket to see what was inside. He testified that there was no other reasonable way to verify that the bulge was not a weapon.

Inside the pocket, Rush saw a plastic bag filled with smaller plastic bags containing white powder. Satisfied that the bulge was not a weapon, Rush did not remove anything at that time. Instead, he informed another police officer nearby that Majors possessed suspected narcotics. When a Drug Enforcement Unit Officer searched Majors's pockets, he did not find the package that Rush had seen, but it turned up on a staircase where Majors had been leaning against the banister while waiting to be moved into another room of the house. Rush testified that the package found on the staircase was the same package he had seen in Majors's pocket. Police later determined that the package contained approximately 6.21 grams of cocaine.

The district court denied appellants' two motions to suppress and, after a jury found him guilty, sentenced Majors to 262 months in prison, six years' supervised release, a $3,000 fine, and a $100 special assessment.

DISCUSSION

**Self-representation**

Majors first argues that the district court denied him his Sixth Amendment right to self-representation. The denial of a defendant's right to represent himself, if established, requires reversal without a harmless error analysis. Moreno v. Estelle, 717 F.2d 171, 173 n.1 (5th Cir. 1983).

Prior to trial, Majors's court-appointed attorney, Lisa Kubala, moved to withdraw as counsel. The district court denied the motion, noting that Kubala was Majors's third attorney. On the day of trial, Majors gave the court a letter complaining about Kubala's representation but did not mention anything about self-representation. During trial, Bob Barina, a partner at Kubala's law firm, assisted Kubala by examining the witnesses. Before closing arguments on the second day of trial, Barina informed the court that Majors was dissatisfied with Barina's performance and that Majors wished either to retain counsel or make the closing argument himself.

Although Majors complains of being represented by an attorney who was neither retained by him nor appointed by the court, this circumstance is irrelevant. The district court properly denied his request to represent himself as untimely. Brown v. Wainwright, 665 F.2d 607, 611 (5th Cir. 1982)(en banc) (denying defendant's request to assume his own defense as untimely on the third day of trial prior to closing arguments). Moreover,

3

Majors's request was not unequivocal as it was for either new counsel or permission to make the closing argument. <u>United States v. Martin</u>, 790 F.2d 1215, 1218 (5th Cir. 1986) (the request to proceed pro se must be clear and unequivocal).

**Motions to suppress**

Majors argues that the district court erred by denying his motions to suppress. In reviewing the denial of a motion to suppress, the district court's factual findings are reviewed for clear error and the legal conclusions are reviewed <u>de</u> <u>novo</u>. <u>United States v. Smith</u>, 273 F.3d 629, 632 (5th Cir. 2001). The evidence is viewed in the light most favorable to the prevailing party. <u>Id.</u>

Majors first contends that because the government could not produce the search warrant for Gilbert's house, it could not show that there was probable cause or reasonable suspicion for Rush to put Majors on the floor, handcuff him, and pat him down for weapons. We note initially that Majors lacked standing to contest the existence of the warrant, since he was neither an owner nor occupant of the house, but merely a visitor. <u>Minnesota v. Carter</u>, 525 U.S. 83, 90, 119 S.Ct. 469, 473, 142 L.Ed.2d 373 (1998). Nevertheless, the existence of a warrant was not a *sine qua non* to the officer's frisking or handcuffing Majors. Although the actual warrant for entering the house was lost, nothing in the record suggests that the warrant did not exist at the time of the search. Furthermore, the officers' testimony demonstrates that they <u>believed</u> they were executing a valid warrant to search for drugs.

4

"Under the good faith exception to the exclusionary rule, evidence is not to be suppressed . . . where it is discovered by officers in the course of actions that are taken in good faith and in the reasonable, though mistaken, belief that they are authorized." United States v. De Leon-Reyna, 930 F.2d 396, 400 (5th Cir. 1991)(en banc)(internal quotation marks and citation omitted).

Rush was executing a search for drugs under the good faith belief that the search was authorized by a warrant. Based on his knowledge of Majors's history of narcotics and weapons offenses, it was reasonable to believe that Majors might be armed. See United States v. Dixon, 132 F.3d 192, 197 (5th Cir. 1997) ("This Circuit has explicitly recognized that firearms are 'tools of the trade' of those engaged in illegal drug activities . . . .") (internal quotation marks and citation omitted)). Rush's patdown for weapons was reasonable.

Majors further argues that even if a warrant existed, Rush exceeded the scope of a reasonable search because he could not have reasonably believed that the bulge in Majors's pants was a weapon. Majors relies on Minnesota v. Dickerson, 508 U.S. 366, 378-79, 113 S. Ct. 2130, 2138-39, 124 L. Ed. 2d 334, 347-48 (1993), where the Supreme Court held that an officer's "plain feel" seizure of cocaine violated Terry because the officer manipulated a lump in the defendant's pocket after he knew that the lump was not a weapon. Majors fails to recognize that "so long as an officer is investigating an object that reasonably may be a weapon, the Terry

5

search may continue." United States v. Maldonado, 42 F.3d 906, 909 (5th Cir. 1995); see also United States v. Campbell, 178 F.3d 345, 349 (5th Cir. 1999) (holding that an officer "had not ruled out the possibility that the large bulge was a weapon, and his removal of the pocket's contents was not beyond the scope of a permissible Terry frisk").

Unlike the officer in Dickerson, Rush did not rule out the possibility that the bulge in Majors's pocket was a weapon; his continued search of Majors's pocket was therefore justified under Terry for the protection of himself and the other officers in the house. The bulge in Majors's pocket was "bigger than a softball" and "in between hard and soft." Although Rush could not feel a knife in Majors's pocket, he could not tell if there was a another weapon in the bulge. Cf. Maldonado, 42 F.3d at 909 (officer wondering if a bulge in a boot was a grenade). Rush testified that apart from looking inside Majors's pocket, there was no other reasonable way to determine if a weapon was present. Viewed in the light most favorable to the Government, Rush had not ruled out the possibility that the bulge was a weapon, nor had he ruled out that the softball size item in Majors's pocket might conceal a weapon. Consequently, he could continue the search beyond the initial "plain feel."[1]

---

[1]Pursuant to Federal Rule of Appellate Procedure 23(j), Majors asked this court to take notice of United States v. Casado, 303 F.3d 440 (2d Cir. 2002), in which the Second Circuit recently held that an officer's search of the defendant's pocket violated the Fourth Amendment. Casado, however, is

## Sufficiency of the evidence

Majors next challenges the sufficiency of the evidence to establish that the cocaine seized was intended for distribution. "[W]e must determine whether any reasonable trier of fact could have found that the evidence established the essential elements of the offense beyond a reasonable doubt." United States v. Reyna, 148 F.3d 540, 543 (5th Cir. 1998). "All credibility determinations and reasonable inferences are to be resolved in favor of the verdict." United States v. Resio-Trejo, 45 F.3d 907, 911 (5th Cir. 1995).

Majors argues that Johnson's testimony is insufficient to establish intent to distribute because he testified only that the manner in which the cocaine was packaged in smaller individual bags usually indicates that it is for distribution. Intent to distribute, however, may also be inferred from "the presence of distribution paraphernalia, large quantities of cash, or the value and quality of the substance.'" United States v. Munoz, 957 F.2d 171, 174 (5th Cir. 1992). No minimum quantity of the controlled substance is required. Id.

Johnson testified that the plastic bag contained approximately 25 smaller bags of cocaine, each with a street value

distinguishable from the present case. In Casado, the officer reached into the defendant's pocket and removed a pager, cash, and crack cocaine without first conducting any type of pat down. In this case, Rush conducted a pat down, identified a bulge that reasonably could have been a weapon, and then proceeded to look into Rush's pocket.

of $30-40 dollars.  Johnson further testified that a knife and scale box were found in the house and that scales are usually used to weigh drugs and to break them down into smaller portions.  Based not only on the packaging of the cocaine, but also on its value and the presence of the knife and scale in the house, a rational jury could have found beyond a reasonable doubt that Majors possessed the cocaine with an intent to distribute.

**Sentence enhancement**

Majors next argues that the district court erred by enhancing his statutory maximum sentence from 20 to 30 years based on his stipulation to a 1990 felony drug conviction because the court misinformed him that without a stipulation, proof of the prior conviction would be placed before the jury.  He also argues that the district court failed to comply with the requirements of 21 U.S.C. § 851(b) by asking him to affirm or deny the prior conviction <u>before</u> he was convicted by the jury.[2]

---

[2]21 U.S.C. § 851(b) provides:

Affirmation or denial of previous conviction. If the United States attorney files an information under this section, the court shall <u>after conviction</u> but before pronouncement of sentence inquire of the person with respect to whom the information was filed whether he affirms or denies that he has been previously convicted as alleged in the information, and shall inform him that any challenge to a prior conviction which is not made before sentence is imposed may not thereafter be raised to attack the sentence.

(emphasis added).

8

Although the district court did not strictly comply with 21 U.S.C. § 851(b), any error was harmless. In United States v. Garcia, 954 F.2d 273 (5th Cir. 1992), the district court questioned the defendant about prior convictions and elicited an admission regarding the convictions at the rearraignment hearing rather than after conviction. This court held that because the defendant failed to comply with the procedures of § 851(c) to challenge the convictions and never revealed what challenges he was prepared to level, the district court's failure to strictly comply with the warning component of § 851(b) was harmless. Id. at 277-78; see also United States v. Fragoso, 978 F.2d 896, 902-03 (5th Cir. 1992).

As in Garcia, the record in this case does not indicate that Majors complied with the procedures of § 851(c) to challenge the 1990 conviction. Moreover, although he did not wish to stipulate to the conviction, he did not reveal to the district court or to this court the basis for any challenge to his prior conviction. The district court's failure to comply strictly with § 851(b) is harmless.

**Double-counting a prior conviction in sentencing**

This court reviews the application of sentencing guidelines de novo. United States v. Cothran, 302 F.3d 279, 286 (5th Cir. 2002). Contrary to Majors's contention, the district court did not impermissibly double count his 1990 drug conviction.

Although the 1990 conviction enhanced his statutory maximum sentence, it did not increase his criminal history category.

Majors qualified as a career offender under § 4B1.1 based on prior convictions of robbery and burglary of a habitation.[3] Section 4B1.1 automatically sets the criminal history category of career offenders at VI. Thus, regardless of the fact that Majors's presentence investigation report added three points to his criminal history score for the 1990 drug conviction, Majors's criminal history category would have been set at VI due to his status as a career offender. Moreover, according to the table in Chapter 5, Part A of the sentencing guidelines, thirteen or more criminal history points establish a criminal history category of VI; even without the three points for the 1990 drug conviction, Majors's criminal history score would have been 16, and his category would have been VI. Any double counting would have therefore been harmless.

For the foregoing reasons, the judgment of the district court is affirmed.

**AFFIRMED.**

---

[3]Because this court applies the version of the sentencing guidelines in effect at the time of sentencing, United States v. Phillips, 210 F.3d 345, 348 n.1 (5th Cir. 2000), this opinion references the sentencing guidelines effective as of November 1, 2001. Section 4B1.1 of the sentencing guidelines treats a defendant as a career offender if 1) he was at least eighteen years old at the time of the instant offense of conviction, 2) the offense of conviction is a felony that is a crime of violence or a controlled substance offense, and 3) he has at least two prior felony convictions of either a crime of violence or a controlled substance offense.