United States Court of Appeals
Fifth Circuit

**F I L E D**

**May 27, 2005**

Charles R. Fulbruge III
Clerk

UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 04-50455
_____

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

TIMOTHY MICHAEL WALKER,

Defendant - Appellant.

---

Appeal from the United States District Court
for the Western District of Texas

---

Before JONES, WIENER, and CLEMENT, Circuit Judges.

EDITH H. JONES:

Appellant Timothy Michael Walker was convicted of one count of conspiring to possess with intent to distribute over fifty grams of crack cocaine and one count of possessing with intent to distribute over fifty grams of crack cocaine. Due to his two prior felony drug convictions, the Government sought and received an enhanced sentence of a mandatory term of life imprisonment. On appeal, Walker raises three issues: the court's exclusion, pursuant to FED. R. EVID. 807, of a videotaped police interview of a witness; the admission in evidence of two prior drug convictions; and the court's failure strictly to follow 21 U.S.C. § 851(b)

enhancement procedure. Of these, only the first issue is problematic.

**BACKGROUND**

On November 5, 2003, Police Officer Margarita Venegas was called to the West Wind Hotel in Midland, Texas, to respond to a disturbance in the parking lot. When she arrived, she saw Walker walking away, toward the hotel. Ignoring her order to stop, he started running toward Room 21. He opened the door, threw some items into the room and then was detained by Officer Venegas. Officer Caleb Edwards searched Walker and found some cash and empty plastic bags. Walker was arrested for evading detention.

Meanwhile, in Room 21, Venegas found three women. Denise Asbury, Walker's sister, was in the bathroom, flushing the toilet several times. Police officers searched the room with Asbury's consent and found a small amount of what appeared to be crack cocaine in the bathroom. Asbury, the room renter, was arrested for possession of cocaine. The other two women were also arrested: Cookie Maxwell on an outstanding warrant for theft by check, and Ramona Gregory for giving a false name.

At the jail, Asbury was observed dropping a plastic bag of what appeared to be crack cocaine into a garbage can. Testing later confirmed that the bag contained 108 grams of crack cocaine. About this time, Walker was observed with a plastic bag inside his

2

mouth. It was removed, and the white residue it contained tested positive for cocaine.

While at the jail, Gregory agreed to give a video statement in which she said that the items thrown into the room by Walker were a phone charger, a piece of paper, and a large plastic bag that contained crack cocaine. According to Gregory, Asbury then took this bag and went into the bathroom. Gregory said that Walker had been in possession of the same bag earlier in the evening in Room 21, and that it was this bag that Asbury put in the trash can at the jail.

Maxwell also gave a video statement at the jail. Maxwell said that Walker threw a cell phone and a piece of paper into the room. She denied, however, that either Walker or Asbury had been in possession of any drugs. She said that the first time she had seen any drugs was when Asbury put them in the garbage can in the jail.

Walker pled not guilty and went to trial. Asbury testified against Walker as part of a plea bargain. She admitted that they had both been selling crack from Room 21 for two weeks and that Walker was her supplier. Asbury said that Walker threw a bag of crack cocaine into Room 21 when he opened the door. Gregory also testified at trial that she had been in the room smoking crack cocaine and that Walker had thrown a bag of crack cocaine into the room when he opened the door.

Maxwell could not be found at the time of the trial. Walker sought to enter into evidence her video statement that she had never seen any cocaine until Asbury threw it into the garbage can at the jail. On the Government's objection, the judge refused to allow it into evidence.

The Government presented two prior drug convictions of Walker for the purpose of showing his intent. The convictions also were used to enhance his sentence under 21 U.S.C. § 841(b)(1)(A). Walker was convicted and sentenced to life in prison.

### Analysis

Walker first argues that the district judge should have admitted the videotape of the interview with Maxwell under the residual hearsay exception of Rule 807 of the Federal Rules of Evidence. The exception provides:

> A statement not specifically covered by Rule 803 or 804 but having equivalent circumstantial guarantees of trustworthiness, is not excluded by the hearsay rule, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. . . .

FED. R. EVID. 807.[1]

---

[1]     Congress created Rule 807 because the Advisory Committee believed it "presumptuous to assume that all possible desirable exceptions to the hearsay rule have been catalogued and to pass the hearsay rule to oncoming generations as a closed system." The subject matter of Rule 807 was initially embodied in two separate sections, Rule 803(24) and Rule 804(b)(5). No change in meaning was intended by the transfer. FED. R. EVID. 803 Advisory Committee's Note.

4

This court reviews decisions to admit or exclude evidence for abuse of discretion.  <u>United States v. Phillips</u>, 219 F.3d 404, 409 (5th Cir. 2000).  The residual hearsay exception "is to be 'used only rarely, in truly exceptional cases.'" <u>Id.</u> at 419 n.23 (quoting <u>United States v. Thevis</u>, 665 F.2d 616, 629 (5th Cir. 1982)).  We "will not disturb the district court's application of the exception absent a definite and firm conviction that the court made a clear error of judgment in the conclusion it reached based upon a weighing of the relevant factors."  <u>Phillips</u>, 219 F.3d at 419 n.23 (internal citations and quotations omitted).[2]

Walker points to the Ninth Circuit's decision in <u>United States v. Sanchez-Lima</u>, 161 F.3d 545 (9th Cir. 1998), to argue that the residual hearsay exception should apply in the instant case.  In <u>Sanchez-Lima</u>, the Ninth Circuit reversed the lower court's refusal to admit testimonial videotapes of interviews.  Sanchez-Lima, charged with the assault of two border patrol agents, offered several videotapes from a defense investigator containing interviews with other members of his group who were attempting to cross the border illegally.  The interviews tended to show that the border patrol agents did not identify themselves and that Sanchez-

---

[2]    Even if we were to find an abuse of discretion in the court's refusal to admit Maxwell's interview, the conviction could be reversed only if that error affected Walker's substantial rights.  The jury learned, however, that all three women in Room 21 initially denied to the police that Walker had thrown a bag of narcotics in the door.  We assume, nevertheless, that Walker could establish the requisite level of harm.

Lima appeared to be acting in self-defense. The interviewees were deported before the trial and were unavailable to testify.

Reversing the district court, the Ninth Circuit held that all three elements of the Rule 807 exception had been satisfied. The court noted further that the testimony was trustworthy because the interviewees:

> (1) were under oath and subject to the penalty of perjury; (2) made the statements voluntarily; (3) based the statements on facts within their own personal knowledge; (4) did not contradict any of their previous statements to government agents and defense investigators; and (5) had their testimony preserved on videotape which would allow the jurors an opportunity to view their demeanor.

Id. at 547. The case was remanded for retrial with consideration of the videotape evidence.

This court has distinguished Sanchez-Lima and upheld the exclusion of interview transcripts, see United States v. Perez, 217 F.3d 323 (5th Cir. 2000), based on the deference owed to the trial court and testimony at trial by an INS Agent who estimated that ninety percent of undocumented immigrants lie when questioned by the INS. Id. at 330. Further, the Perez interviewees were not under oath, whereas the interviews in Sanchez-Lima "were made under oath and the aliens were subject to the penalties of perjury, the testimony was preserved on videotape, and the witnesses were subject to cross-examination." Id. at 330 n.30.

Walker contends that Maxwell's interview more closely resembles those of Sanchez-Lima than Perez. Although not under

6

oath, Maxwell was making a formal statement to police, and "faced serious consequences for any false statement to the officers." And, unlike the other women, who recanted at the police station and admitted to the presence of drugs in the room, Maxwell steadfastly denied in her video statement that she saw any drugs in Room 21. Walker also notes that although the unavailability of cross examination is a key reason to exclude hearsay, Maxwell's videotaped interview was actually conducted by police, giving it greater indicia of trustworthiness than the interviews in Sanchez-Lima, which were conducted by a defense investigator. Finally, Walker argues that as Maxwell's interview was videotaped, the jury could make their own assessments of Maxwell's trustworthiness.

This is a closer case than Perez, but we nonetheless find Walker's arguments unavailing. The lodestar of the residual hearsay exception analysis is whether there exist "equivalent circumstantial guarantees of trustworthiness." FED. R. EVID. 807; MCCORMICK ON EVIDENCE 345 (John W. Strong ed., 1999). The fact is, as the Government notes in its brief, "Maxwell was in a room with a lot of cocaine." Cocaine had been found in the bathroom and one of the other women was hiding cocaine on her person. This situation differs dramatically from Sanchez-Lima because the videotape interviewees in that case were already subject to deportation and had no incentive to lie about whether or not it appeared that the border patrol agents were attacking Sanchez-Lima. Sanchez-Lima, 161 F.3d at 547. Maxwell, on the other hand, was not under oath,

7

was being interviewed by police at a police station, and was facing the threat of criminal charges. She had every incentive to lie. Her disappearance before trial confirms her lack of trustworthiness.

Walker also asserts that the district court's failure to admit the videotape evidence violated the compulsory process clause of the Sixth Amendment, an error that must be reviewed de novo. Perez, 217 F.3d at 326. He claims that he was prevented from presenting a defense because he was unable to introduce into evidence the videotaped interview. An accused does not, however, have "an unfettered right to offer testimony that is incompetent, privileged or otherwise inadmissible under standard rules of evidence." Taylor v. Illinois, 484 U.S. 400, 410-11 (1988). Walker also argues that because the Government found the Maxwell videotape adequate when seeking an indictment of Asbury before a grand jury, it is disingenuous to object to its use in Walker's defense. Grand jury proceedings, as Walker's counsel know, are not bound by the same rules of evidence as judicial proceedings. FED. R. EVID. 1101(d)(2).

The next issue concerns the district court's admission into evidence of two 1987 convictions of Walker for delivery of cocaine by actual transfer. Walker's trial counsel objected, arguing that the convictions would be more prejudicial than probative and that they were too remote to be probative for the issues presented by the Government.

8

Admissibility of the prior convictions under FED. RULE EVID. 404(b) is governed in this Court by the familiar <u>Beechum</u> test, <u>United States v. Beechum</u>, 582 F.2d 898 (5th Cir. 1978) (en banc), and is subject to review for abuse of discretion. Here, we find no abuse. Walker put his intent at issue by pleading not guilty. Because Walker was not charged with simple possession, but rather with intent to distribute and conspiracy to distribute, his state of mind with regard to the cocaine was a critical element of both crimes. Further, while the convictions were old, this court has sanctioned consideration of "old" evidence on other occasions, <u>see, e.g.</u>, <u>United States v. Hernandez-Guevara</u>, 162 F.3d 863, 872-73 (5th Cir. 1998) (eighteen years); <u>United States v. Chavez</u>, 119 F.3d 342, 346-47 (5th Cir. 1997) (fifteen years), and has noted that "the age of the prior conviction does not bar its use under Rule 404." <u>United States v. Broussard</u>, 80 F.3d 1025, 1040 (5th Cir. 1996) (ten years). Finally, the court adequately cautioned the jury as to the limited use of the convictions.

Walker's last complaint is that the judge failed to allow him to affirm or deny his enhancement convictions in open court, a procedural device provided in 21 U.S.C. § 851(b)[3] in connection

---

[3]     21 U.S.C. § 851(b) provides, in pertinent part:

Affirmation or denial of previous conviction. If the United States attorney files an information under this section, the court shall after conviction but before pronouncement of sentence inquire of the person with respect to whom the information was filed whether he affirms or denies that he has been previously convicted as alleged in the information, and shall inform him that any challenge to a prior conviction which is not made before sentence is imposed may

with enhanced life sentences.  21 U.S.C. § 841(b)(1)(A).  As he did not bring this deficiency to the court's attention, his claim is reviewed for plain error.  United States v. Thomas, 348 F.3d 78, 86 (5th Cir. 2003).  Plain error review is satisfied if there is (1) an error, (2) that is clear, and (3) affects defendant's substantial rights.  United States v. Olano, 507 U.S. 725, 732 (1993). If all three of these factors are satisfied, this court should address the error only if it "seriously affects the fairness, integrity, or public reputation of judicial proceedings." Id. at 736 (quoting United States v. Atkinson, 297 U.S. 157, 160 (1936)).

Perhaps there was plain error here, but it did not harm Walker's substantial rights.  This court has refused to remand in the face of preserved error where, as here, there is some fulfillment of § 851(b) requirements.  See United States v. Majors, 328 F.3d 791, 796 (5th Cir. 2003).  In Majors, the Court excused strict compliance where the defendant failed to explain how he would challenge the offenses that led to the enhancement.  Walker's only substantive challenge to the prior convictions has been rejected by this court.  United States v. Barr, 130 F.3d 711, 712 (5th Cir. 1997) (offenses treated separately when they occurred between

---

not thereafter be raised to attack the sentence.

10

identical parties on sequential days).  There was no reversible error.[4]

## CONCLUSION

For these reasons, the judgment of conviction and sentence are **AFFIRMED**.

---

[4]  Walker's assertion that his mandatory life sentences are unconstitutional based on <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000), is foreclosed by circuit precedent.  <u>United States v. Moreno</u>, 289 F.3d 371, 372-373 (5th Cir. 2002).