

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-19-2006

# USA v. Hall

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-2486

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"USA v. Hall" (2006). *2006 Decisions.* Paper 731.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/731

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

No. 05-2486

United States of America, Appellee

v.

Jermaine O. Hall, Appellant

On Appeal from the United States District Court
for the District of Delaware
D.C. Criminal No. 03-100
District Judge: The Honorable Kent A. Jordan

_____

Submitted Under Third Circuit LAR 34.1(a)
March 28, 2006

Before: MCKEE and VAN ANTWERPEN, <u>Circuit</u> <u>Judges</u>.
and POLLAK,[*] <u>District</u> <u>Judge</u>.

_____

OPINION OF THE COURT

_____

POLLAK, District Judge.

This matter comes before us on Jermaine Hall's appeal from a judgment of

_____

[*]Honorable Louis H. Pollak, Senior District Judge for the United States District
Court of the Eastern District of Pennsylvania, sitting by designation.

1

conviction and sentence entered in the district court on April 29, 2005, following his conviction at a bench trial in this cocaine possession case. Hall challenges the District Court's order, entered April 8, 2004, denying his motion to suppress physical evidence obtained from a pat-down search conducted by state probation officer Janet New. The District Court had jurisdiction pursuant to 18 U.S.C. § 3231, and we have jurisdiction pursuant to 28 U.S.C. § 1291. For the reasons that follow, we will reverse the District Court and remand the case so that the District Court may consider, in the first instance, the Government's alternative argument that Hall consented to the pat-down search.

I. Background

The following is what happened: On November 3, 2003, Officer New – along with two other probation officers and two members of the Newark, Delaware police department – went to the residence of Kevin Fields to arrest Fields and search his home. Fields was on probation for trafficking cocaine, and the probation office possessed evidence that Fields had begun to use marijuana. At the suppression hearing, Officer New testified that because of Fields' history of drug abuse, she approached the house with a heightened concern that "there may be weapons involved." Excerpts of Record ("E.R.") at 35.

Once the officers arrived at the residence, one of the probation officers knocked on the door. Officer New testified that the officers sensed activity in the house, but that it

2

was possibly as long as five minutes before anyone came to open the door. Officer New testified that this delay led her and her colleagues to believe that there was something out of the ordinary going on inside of the house.

When the door was finally opened, Fields was secured by one of the other probation officers. Officer New and one other officer then approached two men sitting together on a couch. Officer New testified that the men had a "deer-in-the-headlights" expression on their faces, and, as a result, "[she] got a strange feeling in [her] gut that probably something was not right." E.R. 39-40. Upon reaching the two men, Officer New asked them to stand up so that they could be handcuffed. Once one of the two men – later identified as Hall – stood up, Officer New testified that she noticed "two bulges in the front pockets of his jeans." Officer New proceeded to place both men in handcuffs while explaining that it was only for officer safety and that they were not under arrest.

Officer New then asked Hall whether he had anything on him that she needed to worry about, and Hall replied "No." Officer New testified that she next requested Hall's permission to search him and that he gave her a mumbled reply that she took to be an affirmative response.[1] Wearing gloves, Officer New then began a pat-down search of Hall. She first searched Hall's waistband and found nothing so she moved to his front-left pocket and felt the bulge that she had previously noted. At that point, she asked Hall

---

[1] Another officer – Officer Willoughby – wrote in his official report of the exchange that Hall said "yes" when asked if Officer New could search him. E.R. at 53.

3

whether there was anything in the pocket that would be dangerous to her, "meaning whether there was an open knife in his pocket or a needle without a cap on it." E.R. at 43. Hall told Officer New "no," E.R. at 55,[1] and Officer New testified that she could sense only that "it was a wad and I knew it had some substance to it," but that she "didn't know what it was." E.R. at 54-55. She then put her hand in the pocket and was able to sense that it was neither a gun or an open needle, but was still unable to exactly identify what constituted the "wad" in Hall's pocket. As a result, Officer New testified that she pulled the wad out of Hall's pocket and discovered it was paper money. Officer New then handed the money to one of the officers standing behind her because she "knew probably there may need to be a chain of evidence." E.R. at 44.

Officer New next turned her attention to Hall's right pocket. Again Officer New asked Hall whether there was anything in his right pocket that would jeopardize her safety, and he again replied "no." E.R. at 44. Officer New then reached into Hall's pocket and pulled out "a large amount of what appeared to be crack cocaine." E.R. at 44.[2]

---

[1] The Government argues that Hall responded "I don't know" to Officer New's question about whether there was anything dangerous in his pocket. This was not Officer New's testimony. Though confusingly described, Officer New asked Hall two questions before searching both Hall's front-left and front-right pockets. Officer New testified that she first asked "what [is] in your pocket?" E.R. at 44. Each time, Hall responded "I don't know." E.R. at 44, 43. Then Officer New testified that she asked Hall whether there was anything dangerous in his pocket. In response to this question, Hall responded "no" before the search of both his front-left and front-right pockets. E.R. at 44, 55.

[2] The record does not tell us whether any of the officers conducted a protective pat-down search of the other individual on the couch.

4

After a hearing on Hall's motion to suppress evidence obtained from Officer New's search, the District Court denied the motion. The District Court concluded that the totality of the circumstances supported Officer New's decision to search Hall. Specifically, the District Court noted the fact that the home was the suspected site of drug activity, there was a long delay before the owner of the house answered the door, Hall appeared nervous, and Hall had bulging pockets. Because the District Court concluded that the initial pat-down search of Hall was warranted, the court also held that Officer New's decision to reach into Hall's front pockets and pull out the items within was warranted insofar as Officer New was unable to identify by feel what was in those pockets. We now reverse.

## II. Analysis

Hall makes two arguments. First, he argues that Officer New did not possess reasonable suspicion to believe that he was armed and/or dangerous to Officer New, and, consequently, the protective pat-down search was unjustified. Second, Hall argues that, even assuming arguendo that such a search was initially justified, Officer New's decision to reach into Hall's pockets and remove their contents exceeded the scope of a permissible protective search. We agree with Hall on both points.

A.     The Initial Decision to Conduct the Protective Search

In *Terry v. Ohio*, 392 U.S. 1 (1968), the Supreme Court held that "the police can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articuable facts that criminal activity 'may be afoot,' even if the officer lacks probable cause." *United States v. Sokolow*, 490 U.S. 1, 7 (1989) (citing *Terry*, 392 U.S. at 30). One of the permissible purposes of such a search is the protection of the police officer. Consequently, a police officer may make a limited protective search for concealed weapons in circumstances where he or she has reason to believe that the suspect is armed or otherwise dangerous. *Terry*, 392 U.S. at 24, 30; *see also Adams v. Williams*, 407 U.S. 143, 146-47 (1972).

In allowing for this exception to the warrant requirement, the *Terry* Court was careful to note that the exception is "narrowly drawn." 392 U.S. at 27. In order for such a search to be justified, "the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Id*. at 21. The Court's reasoning in *Terry* does not support searches in which an officer primarily relies on her "inchoate and unparticularized suspicion or hunch." *Sokolow*, 490 U.S. at 7 (quoting *Terry*, 392 U.S. at 27) (internal quotation marks omitted).

The Court reiterated this position in *Ybarra v. Illinois*, 444 U.S. 85, 92-93 (1979). In that case, the Court was confronted with a search in which police officers armed with a warrant to search a tavern for evidence of narcotics announced upon entering the tavern

6

that all present would be subject to a "cursory search for weapons." The Court held that the evidence obtained from the weapons searches of everyone present must be suppressed. It wrote:

> Nothing in *Terry* can be understood to allow a generalized "cursory search for weapons" or, indeed, any search whatever for anything but weapons. The "narrow scope" of the *Terry* exception does not permit a frisk for weapons on less than reasonable belief or suspicion directed at the person to be frisked, even though that person happens to be on premises where an authorized narcotics search is taking place.

*Id*. at 93-94 (footnote and citation omitted).

Relying on *Ybarra*, we recently suppressed evidence from a pat-down search of the owner of a home for which officers were executing a valid search warrant for drugs. *United States v. Ritter*, 416 F.3d 256, 268-69 (3d Cir. 2005). The officer testifying at the suppression hearing in that case explained, "when people are encountered on the premises of property to be searched during the course of executing a search warrant, usually they are 'secured' and 'padded [sic] down for weapons' primarily to ensure officers' safety." *Id*. at 269. In light of that explanation for the search, we affirmed the District Court's conclusion that the searching officer did not possess a "reasonable belief or suspicion" that the owner was armed. *Id*.; *see also Doe v. Groody*, 361 F.3d 232, 243 (3d Cir.2004) ("A search warrant for a premises does not constitute a license to search everyone inside."); *Leveto v. Lapina*, 258 F.3d 156, 165 (3d Cir. 2001) (same).

In contrast, protective pat-downs are most commonly allowed in situations where an officer notices a large bulge near the waistband or other area where one would

7

commonly carry a weapon. *See, e.g.*, *Pennsylvania v. Mimms*, 434 U.S. 106, 107 (1977) (noting that a large bulge under a jacket of a suspect justified a pat-down search for officer protection); *United States v. Baker*, 78 F.3d 135, 136-137 (4th Cir. 1996) (concluding that protective search was justified because officer observed a triangular bulge in the area of a suspect's pants waistband and shirt); *United States v. Elsoffer*, 671 F.2d 1294, 1295, 1299 (11th Cir.1982) (holding that officers had probable cause to arrest an individual in an airport because the individual had a bulge "shaped like a good-sized softbound book on the front of [his] trousers from waistline to crotch"). Other factors that courts have considered include the amount of light available to the officer during the confrontation, the presence of other officers, the presence of other individuals, whether the suspect exhibits any furtive behavior when approached by the officer, and the nature of the suspected criminal activity. *See, e.g.*, *United States v. $84,000 United States Currency*, 717 F.2d 1090, 1097-1099 (7th Cir. 1983) (holding that a pat-down search was justified when the officers observed a bulge in an area (a boot) where "weapons are often secreted;" the suspect's conduct conformed with a DEA drug courier profile; the suspect exhibited "furtive and anxious movement;" and the officers were alone with the suspect and an accomplice in a poorly lit area).

The totality of the circumstances here show that Officer New did not possess reasonable cause to believe that Hall might be armed when she decided to do an officer safety search. Many of the factors that are typically marshaled to justify a protective pat-

8

down are absent here. For example, Hall's conduct did not conform to any criminal profiles, Officer New was accompanied by four other officers when she confronted Hall, and there is no evidence that the site of the confrontation was poorly lit. Most importantly, though, Officer New noted no bulges in any areas on Hall's person that would suggest that he was armed. Indeed, insofar as Officer New's awareness of the bulges in Hall's front pockets is given as a reason to justify the search, Officer New testified that she requested Hall stand up to be handcuffed "for officer safety" even *before* she noticed these bulges. E.R. 38, 41-42. Thus, many of the well-recognized circumstances that generally might support a protective pat-down search are not present here.

Officer New instead justified her protective search of Hall by pointing to factors that courts do not usually accept as supporting the need for a protective pat-down search. As the Supreme Court stated in *Ybarra* – and we followed in *Ritter* – one's presence during the execution of a search warrant will not provide individualized suspicion of being armed even during an authorized search for narcotics. *Ybarra*, 444 U.S. at 93-94. Consequently, Officer New's testimony that she approached Fields's residence with a heightened concern that "there may be weapons involved" because of Fields's history of drug abuse cannot be relied upon in support of Officer New's decision to pat down Hall. Moreover, the extended amount of time the occupants of the house took to respond to the door may have led Officer New to believe that "something" was strange, but, under the

9

circumstances, that "something" could not reasonably have been that Hall – a visitor in the house – was armed. And, again, Officer New requested that Hall stand up to be handcuffed prior to noticing the bulges in Hall's front pockets. Consequently, at the point at which Officer New had apparently decided to search Hall, the only arguably relevant information she possessed was Hall's "deer-in-the-headlights" look and her "strange feeling in my gut that probably something was not right." E.R. 39-40. However, a suspicious look and a gut feeling, without more, do not provide reasonable suspicion that a person may be armed. *See United States v. Campbell*, 843 F.2d 1089, 1093-94 (8th Cir. 1988) ("[O]fficers must be acting on facts directly relating to the suspect or the suspect's conduct and not just on a 'hunch' or on circumstances which 'describe a very broad category of predominantly innocent travelers'") (citation omitted). As a result, the initial decision to pat down Hall was not justified under the circumstances.

Finally, even were we to include in our analysis Officer New's late awareness of the bulges in Hall's front pockets, this lone additional fact would not overcome the absence of other circumstances that would typically lead an officer to reasonably believe that an individual is armed. This is because Officer New did not testify that the bulges in Hall's front pants pockets were particularly large or unusual. Indeed, common sense indicates that the bulge produced by the crack vials in Hall's front-right pocket were not consistent in size or shape with a bulge that would be produced by a concealed weapon. Moreover, there is nothing in Officer New's testimony to suggest that she assumed the

10

bulge was actually a weapon. Nor is a front pocket an area where a gun or other bulky weapon would commonly be concealed, such as the waistband of his pants, his jacket, or the top of his boot. And because almost everyone carries something in their pockets, to hold otherwise would expose all citizens to the type of "cursory search for weapons" explicitly rejected by the Court in *Ybarra*. Therefore, we conclude that the pat-down of Hall was unreasonable under the circumstances.

B. The Execution of the Pat-Down Search

Even assuming arguendo that the initial decision to handcuff and pat down Hall in the course of a protective search was lawful, the pat-down itself exceeded what was reasonable under the circumstances. In *Minnesota v. Dickerson*, 508 U.S. 366 (1993), the Court endeavored to further describe the acceptable limits of a protective search for weapons. The Court held that the police may seize contraband discovered through a pat-down of a suspect's outer clothing if the contraband either (1) reasonably feels like a weapon or, alternatively, (2) is immediately apparent as recognizable contraband through "plain feel." *Id*. at 375-76; *see also Sibron v. New York*, 392 U.S. 40, 65 (1968) (noting that protective searches will typically be confined to "a limited patting of the outer clothing of the suspect for concealed objects which might be used as instruments of assault"). If the frisk goes beyond what is necessary to determine if the suspect is armed, its fruits will be suppressed. *Dickerson*, 508 U.S. at 373.

11

In *United States v. Edwards*, 53 F.3d 616, 619 (3d Cir. 1995), we upheld a police protective search where the searching officer felt a "hard, bulky object" in the suspect's pocket. *Id*. Believing it to be a weapon, the officer reached into the pocket and removed the object, which turned out to be an envelope filled with a hard substance. The officer then made the decision to open the envelope because the officer testified that the feel of the envelope led him to conclude that the envelope contained a small-caliber handgun encased in a holster. *Id*. In fact, the envelope was tightly packed with fraudulent credit cards and drivers' licenses. *Id*. We concluded that the police officer "could reasonably have confused the square, bulky mass of credit cards and drivers' licenses for a small handgun sheathed in a square, leather holster that masked its outlines," and therefore upheld the District Court's denial of the appellant's motion to suppress the contents of the envelope. *Id*.

Officer New's description of her pat-down search of Hall indicates that it does not come within either exception to the suppression principles described in *Dickerson* and followed by us in *Edwards*. The first exception – seizure of contraband that reasonably feels like a weapon – is inapplicable because Officer New acknowledged that she made no real attempt to distinguish between bulging items that could be weapons and other types of concealed objects. Instead, she reached into Hall's pockets and simply removed all of the items they contained. Consequently, the removal of the items from Hall's pockets "overstepped the bounds of the strictly circumscribed search for weapons allowed

12

under Terry." *Dickerson*, 508 U.S. at 378.

Moreover, the *Dickerson* exception for items that could reasonably be weapons would only be applicable here if – as was the case in *Edwards* – there was evidence that Officer New could have reasonably mistaken the items in Hall's pockets for weapons. There is no such evidence here. First, Officer New testified that as a result of her initial pat-down she did not know what Hall had in either of his front pockets. E.R. at 45-55. And, once she put her hand inside of the front-left pocket, she conceded that the contents of that pocket did not feel like a weapon. E.R. at 43. As for the right-front pocket – where the cocaine was discovered – Officer New never testified that her feel of the bulge in that pocket led her to suspect that it contained a weapon. E.R. at 44. Second, a reasonable officer in Officer New's position certainly would have been able to conclude that the money and cocaine contained in Hall's pockets were not weapons by the time she placed her hands inside of the pockets. Thus there was no need to then remove the items to inspect them further. For these reasons, though "undoubtedly a convenient method for detecting weapons," Officer New's indiscriminate removal of every bulging object when conducting the protective pat-down search was unconstitutional. *See United States v. Campa*, 234 F.3d 733, 739 (1st Cir. 2000) ("Although we recognize that searching by means of a pat-down is not an exact science, the government does not even argue that [the officer] thought appellant's wallet – the item particularly at issue here – could be a weapon. He simply removed every bulging object as he searched, undoubtedly a

13

convenient method for detecting weapons, but one that goes beyond the limited invasion of privacy authorized by *Terry* and its progeny.")[3]

Nor can Officer New's search of Hall be saved under the second exception for pat-down searches reserved for situations where the officer immediately recognizes as contraband the object she is feeling. Officer New gave no testimony that her pat down of Hall led her to believe that his right-front pocket contained cocaine or any other form of contraband. Absent such officer testimony or other evidence indicating that the searching officer sensed by touch that the objects inside the suspect's pocket were contraband, the further invasion of appellant's privacy occasioned by removing them from his pockets was unnecessary and thus unlawful. *See Terry*, 392 U.S. at 29. Consequently, by Officer New's own admissions, her search of Hall's front pockets did not come within either of the *Dickerson* "plain feel" exceptions. *See also United States v. Schiavo*, 29 F.3d 6, 9 (1st

---

[3] Both the government and the District Court cite to *United States v. Majors*, 328 F.3d 791, 795 (5th Cir. 2003) (per curiam) for the proposition that officer searches for weapons will be justified if the officer does not explicitly rule out the possibility that the bulge in a suspect's pocket may be a weapon. Though we may question the reach of this proposition vis-à-vis *Dickerson*, we need only note here that our case is easily distinguished from *Majors*. In that case, the searching officer could not identify the object from a pat-down of the subject's outer clothing so he pulled open the top of the suspect's pants pocket in order to see into the pocket. At that point he was able to visually identify that the pocket contained cocaine. *Id*. Here, however, Officer New did not limit her tactile search to Hall's outer clothing, and, once Officer New reached in and felt the objects within Hall's pants pockets, she no longer had cause to believe either the money wad or the cocaine possibly could be a weapon. So, unlike the search in *Majors*, Officer New's decision to feel inside of Hall's pockets did explicitly preclude the possibility that the items contained inside were weapons. Therefore, *Majors* is inapplicable here.

14

Cir. 1994) (holding that *Dickerson* does not apply in situations where the officer does not know what the bulge is after the initial pat-down and then proceeds to remove the object to conduct a further search).

## III.  Conclusion

For the foregoing reasons, we will reverse the District Court's order of April 8, 2004, denying Hall's motion to suppress physical evidence obtained from Officer New's pat-down search.  We will, however, reserve judgment on the ultimate merits of Hall's motion to suppress and remand so that the District Court may consider, in the first instance, the government's alternative argument that Hall validly consented to Officer New's search of his pockets.